MATTHEW A. DAUGHERTY, PLAINTIFF AND APPELLEE,
v. SAMUEL S. GOUFF ET AL., DEFENDANTS AND
APPELLANTS.

Contract: ASSIGNMENT: DIVISION OF PROFITS. A, who had a con-
tract for the construction of a bridge across the Platte river, en-
tered into an agreement with B, as follows: "I assign one-half
interest in the within bridge contract of the net proceeds from the
contract after all expenses are paid for value of labor and expense
and other help, etc., no unnecessary outlay to be added, cost of
working own labor to be $2.50 per day and board. S. S. Gouff."
*Held*, 1. That upon the completion of the contract B could main-
tain an action in equity for a division of the profits. 2. That
the testimony showed that B had performed the contract on his
part and was entitled to the relief prayed for. 3. That the
commissions for the negotiation of certain bonds of K. county
were not included in the above contract, and that B was not
required to account to A for any part of the same.

APPEAL from the district court of Keith county, where
on trial before HAMER, J., the following decree was ren-
dered, from which defendant Gouff appeals:

"This cause came on for hearing upon the petition,
answer, reply, and evidence, and on consideration thereof
the court finds for the plaintiff, and that there was a part-
nership between plaintiff and defendant in the construction
of the bridge mentioned in plaintiff's petition, and that the
profits in the construction thereof were to be equally divided
between the plaintiff, Daugherty, and defendant Gouff, and
that the contract made between plaintiff Daugherty and de-
fendant Gouff was a valid contract; that the profits arising
to said plaintiff Daugherty and defendant Gouff, by virtue
of said contract, were $4,737.20; that there is due from the
defendant, Gouff, to the plaintiff, Daugherty, as the remain-
der of his share of said profits, $1,168.60; that the defend-
ant, Gouff, is insolvent, as alleged in said plaintiff's petition
petition; that the plaintiff has a valid and equitable lien

upon the warrant described in the plaintiff's petition for the sum of $1,168.60, if the full amount of said warrant be realized from the collection or sale thereof, and if not so realized, then that the plaintiff has a valid $1,168.60—$1,875 of the full amount realized from the sale or collection of said warrant.

" It is therefore decreed that the defendant, Gouff, within twenty days from the rising of the court, shall pay to the plaintiff, Daugherty, $1,168.60, and on failure so to do the sheriff of said county is ordered to sell said warrant as upon execution, and for the highest bid he can obtain, and to bring the proceeds of said sale into court; *provided further*, if there be funds to pay said warrant, the said sheriff may collect the same and bring the money into court. It is further decreed that the injunction heretofore granted shall be perpetual, and the defendant, the county clerk of said county, is forever enjoined from delivering said warrant to the said Gouff unless he, the said Gouff, shall first comply with the decree of this court.

"It is further decreed that the plaintiff, Daugherty, and the defendant, Gouff, shall each pay half the costs; to which finding and decree of the court, the defendant, Gouff, and the plaintiff, Daugherty, each except, and forty days are allowed them to reduce their bill of exceptions to writing, and the amount of the appeal undertaking is fixed at $2,337.20, to be approved by the clerk of said court."

*Abbott & Abbott* and *J. J. Halligan*, for appellant.

To constitute a partnership *inter se*, there must be a joint undertaking and a community of interest in profits and losses. *Loomis v. Marshall*, 30 Am. Dec., 596, and notes to *Id.*, p. 608. *Sodiker v. Applegate*, 49 Am. Rep., 252. There must be a joint ownership of the enterprise itself, so that each is principal with right to control and direct the affairs pertaining thereto. Each then will be

agent to the other, so as to bind him by his acts pertaining to the enterprise. *Parchen v. Anderson*, 51 Am. Rep., 65. *Richards v. Grinnell*, 50 Am. Rep., 727. *Culley v. Edwards*, 51 Am. Rep., 614. *Boston & Colorado Smelting Co. v. Smith*, 43 Am. Rep., 3. *Smith v. Knight*, 71 Ill., 148. *Parker v. Canfield*, 9 Am. Rep., 317. *Leggett v. Hyde*, 17 Am. Rep., 244. It is held that an agreement to share profits will constitute such persons partners as to *third persons without notice*, but will not make them partners *inter se*. To share profits for services rendered or capital furnished is but a method of fixing compensation, and. never constitutes such persons partners *inter se*. Wait's Actions and Defenses, p. 112, and cases. And as to third persons, the authorities do not seem to hold that the persons so situated are really partners, but that they shall be so held, and be estopped from denying the same, in order to prevent frauds upon third persons and a failure of justice. Wait, *supra*. *Harvey v. Childs*, 22 Am. Rep., 387. When partnership is claimed and denied, the burden of proof is on the plaintiff. *Warren v. Chambers*, 12 Ill., 245. *Manhattan Brass Co. v. Searle*, 6 Am. Rep., 177. *Smith v. Knight*, 22 Am. Rep., 95–97.

*Hastings & McGintie*, for appellee.

Participation in profits' renders persons partners as to third persons, as a general rule. But if from the circumstances, or agreement of the parties, it satisfactorily appears that the share of the profits is not taken by the party sought to be charged in the character of a partner, but in the character of an agent, or as a compensation for services. done or advances made, the rule is otherwise. *Niehoff v. Dudley*, 40 Ill., 406. *Parker v. Fergus*, 43 Ill., 437. *Smith v. Vanderburg*, 46 Ill., 34. *Lintner v. Miliken*, 47 Ill., 178.

MAXWELL, J.

This action was brought by the plaintiff against the defendant, the cause of action being stated in the petition, as follows : " That heretofore, to-wit, on or about June 1, 1884, the county of Keith, in the state of Nebraska, entered into a contract to and with said defendant, Samuel S. Gouff, to build, erect, and construct a wagon road bridge across the Platte river, near the town of Ogallala, in said Keith county, Nebraska, for the specified and agreed sum of $6 per lineal foot, and that in accordance with the terms of said contract said Samuel S. Gouff, at or soon after the said June 1, 1884, entered upon the construction of said bridge, and that on the first day of October, 1884, said Samuel S. Gouff, being wholly insolvent and without credit or commercial standing, was unable to proceed with said contract or to procure the material to construct or complete said bridge, and for the purpose of being enabled to procure material and complete said bridge according to the terms and conditions of the contract, duly assigned, transferred, and set over to this plaintiff the one-half interest in all the profits arising from the building of said bridge, and this plaintiff at once procured for said defendant Gouff the lumber, hardware, nails, etc., that were necessary and requisite for the erection and completion of said bridge, and that said defendant Gouff did do as aforesaid, assign and transfer the one-half interest in and to the profits arising from the building of said bridge to this plaintiff, for and in consideration of this plaintiff helping to procure lumber, hardware, and materials of all kinds for said bridge, procuring freight rates and payment of freight bills, and in the aid, assistance, and credit extended to said Gouff by this plaintiff.    That on or about the 1st day of January, 1885, said Gouff and this plaintiff had said bridge entirely completed, and that they then

and there turned over the same to said Keith county, Ne-
braska, and the same was by said county duly accepted
and approved, and that heretofore, to-wit, on the said 1st
day of October, 1884, this plaintiff duly notified the
board of county commissioners of said Keith county,
Nebraska, of the assignment to him of the one-half inter-
est in said contract, and that he also notified the said
defendant, Howard C. Bleasdale, who was then and is yet
the duly elected, qualified, and acting county clerk of said
Keith county, Nebraska, of such assignment. And this
plaintiff put said assignment upon the records of said
Keith county, Nebraska, where it still remains. And this
plaintiff further says that there was 2,357 lineal feet in said
bridge, and that the same amounted to the sum of $14,-
142, as per said contract, all of which has been paid by
said Keith county, Nebraska, excepting the sum of $1,845,
which has long been due and owing by said Keith county,
Nebraska, to these parties, viz., to this plaintiff and to
said Gouff, and that the erection and completion of said
bridge cost the sum of $8,380.76 and no more, and that
the net profit arising from the building and construction
of said bridge to this plaintiff and said defendant Gouff,
was the sum of $5,756.24, one-half of said sum belonging
to this plaintiff and one-half to said defendant Gouff, to-wit,
the sum of $2,878.12 to each of said parties, and that of
the amount still remaining due and unpaid from Keith
county to the said plaintiff and Gouff, almost the entire
amount, viz., $1,778.12 belongs to and is the sole and sep-
arate property of this plaintiff, and the balance of said
sum of $1,845 yet remaining due and unpaid on said
bridge, viz., the sum of $66.88 and no more, belongs to
and is the separate property of said Gouff; that the said
Gouff and this plaintiff have had a full settlement of their
affairs relating to said bridge, and the balance agreed upon
was as above stated, no part of which has been paid."

The defendant, Gouff, in his answer, admits that on or

about " the first day of June, 1884, the county of Keith, state of Nebraska, entered into a contract with said defendant, S. S. Gouff, to erect, build, and construct a wagon road bridge across the Platte river, near the town of Ogallala, in said Keith county, Nebraska, for the specified and agreed sum of $6 per lineal foot, and that there were $2,324\frac{5}{12}$ lineal feet, and ' that the same amounted to the sum of $13,947.50, and that in accordance with the terms of said contract said defendant, Samuel S. Gouff, entered upon the construction and erection of said bridge.    Denies that on the 1st day of October, 1884, said defendant was insolvent and without credit or commercial standing and that he was unable to proceed with said bridge by reason of his not being able to procure material to construct and complete said bridge, but avers the facts to be, that said defendant Gouff, on the date aforesaid, was and ever since has been solvent, and of good credit and commercial standing; that C. G. Cone & Co., who are lumber dealers at Crete, Nebraska, accepted and negotiated the bonds which said Keith county, Nebraska, had issued for the construction of said bridge, and that upon the bonds being placed in their hands they, the said C. G. Cone & Co., furnished to said S. S. Gouff the lumber and wooden material necessary for the construction of said bridge; that they were not in any manner influenced to do so by plaintiff, Matthew A. Daugherty, nor was the said plaintiff, Daugherty, ever responsible to the said Cone & Co. for the payment of said lumber bill or any part thereof; that said defendant, S. S. Gouff, did, on his own credit, commercial standing, and individual responsibility, unassisted by said plaintiff, procure the necessary hardware, nails, and all other material that entered into the construction of said bridge, and alone and unassisted by said plaintiff Daugherty, did prosecute the building of said bridge to completion; denies that on the 1st day of October, or at any other time, for the purpose of being able to procure

material to construct said bridge, or for any other purpose, he assigned, transferred, or set over to said plaintiff Daugherty a one-half interest in all profits arising from the building of said bridge; denies that said plaintiff Daugherty procured for said defendant any lumber, hardware, nails, or material whatever for the construction of said bridge; denies that said plaintiff procured freight rates on material or paid freight bills or any other bills, but avers that all freight and other bills contracted in the construction of said bridge were paid by said defendant out of his own individual resources; denies that on or about the 1st day of January, 1885, said plaintiff and defendant Gouff had said bridge entirely completed, and that they then and there turned over said bridge to said Keith county, Nebraska; denies that it was by said Keith county duly received and accepted from them, the said Daugherty and defendant Gouff, but avers that on or about the date aforesaid the defendant, Gouff, alone and unassisted by said Daugherty, had said bridge completed, and that it was by said Gouff, and by him alone, then and there turned over to said Keith county, Nebraska, and that it was by said Keith county duly approved and accepted from said Gouff, and from him alone, and that said Keith county then and there issued its certificates of indebtedness for the sum of $1,845, the same being the amount then and still due on said bridge contract to this defendant, S. S. Gouff, and to him alone, and that no claim was made by said plaintiff Daugherty, or any other person, on or to said certificates of indebtedness at that time.     *     *     *
Defendant denies that he at any time boasted or said that by procuring the warrant in his own name he could cheat or swindle said plaintiff, or words to that effect.   Defendant, further answering, says that some time during the month of May, 1884, said defendant received a telegram from said plaintiff, M. A. Daugherty, requesting said Gouff to meet plaintiff at Big Springs, Nebraska, and said

defendant in compliance with said telegram went to Big Springs and there met plaintiff Daugherty; plaintiff then and there told said defendant that he could secure him, defendant, the contract for building the bridge at Ogallala, and that if defendant Gouff would divide the net profits with said plaintiff, he, the said Daugherty, would procure the contract for building said bridge for said defendant, Gouff, and would procure said Gouff and his men railroad passes during the building of said bridge, and also procure one-half freight rates on all material used in constructing said bridge, and said plaintiff further agreed to furnish one-half of the bond which said Keith county required of said defendant Gouff for the 'faithful performance of said contract and of the amount of money necessary to get the work under way; and to meet the necessary expenses until there should be an estimate made on the work done, plaintiff was to furnish one-half; and plaintiff further agreed to divide equally with this defendant any money which he should make in negotiating the bonds which said Keith county had issued for the construction of said bridge, or that he should make in any manner that pertained to said bridge, and defendant Gouff agreed that if said plaintiff, Daugherty, performed the aforementioned proposition and agreement he would assign to him a one-half interest in the net profits of said contract, and said defendant did write on the back of said contract the following: 'I assign one-half interest in the within bridge contract of the net proceeds from the contract after all expenses are paid for value of labor and expense and other help, etc., no unnecessary outlay be added cost of working, own labor to be $2.50 per day and board. S. S. Gouff.' And defendant further says that the said plaintiff, Daugherty, performed no part whatever of his part of the agreement relating to said assignment; that he never procured said contract for said defendant, but that the said contract was procured by this defendant unassisted by said Daugherty; that he, Daugh-

erty, did not procure freight rates and railroad passes for said defendant and his men as aforesaid, and that he did not furnish one-half or any portion of said bond as aforesaid; that plaintiff furnished no money whatever to get said work started or money needed in the prosecution of said contract; that plaintiff at different times made various sums of money out of transactions pertaining to said bonds and bridge, and that said plaintiff wholly failed to account to said defendant Gouff for any part thereof, and that in consequence of said plaintiff wholly neglecting and refusing to perform his part of said agreement this defendant, Gouff, never completed said assignment; and defendant avers that said Daugherty's name was never a part of said assignment, and that this defendant never acknowledged or delivered said assignment to said Daugherty or to any one else."

There are other allegations in the answer which it is unnecessary to set out. A reply is filed, to which it is not necessary to refer. On the trial of the cause the court found " for the plaintiff, and that there was a partnership between the plaintiff and defendant in the construction of the bridge mentioned in the plaintiff's petition, and that the profits in the construction thereof were to be equally divided between the plaintiff, Daugherty, and defendant Gouff; that the contract made between the plaintiff, Daugherty, and the defendant, Gouff, was a valid contract; that the profits arising to said plaintiff Daugherty and defendant Gouff by virtue of said contract were $4,737.20; that there is due from the defendant, Gouff, to the plaintiff, Daugherty, as the remainder of his share of said profits, $1,168.60; that the defendant, Gouff, is insolvent as alleged in said plaintiff's petition; that the plaintiff has a valid and equitable lien upon the warrant described in the plaintiff's petition for the sum of $1,168.60." The defendant appeals.

The testimony tends to show that in February, 1884,

the electors of Keith county voted $12,000 in bonds to aid in the construction of a public bridge across the Platte river at Ogallala in that county; that the contract to construct the bridge was soon afterwards let to the Union Pacific R. R. Company. The railway company seems to have taken the contract in order to procure a substantial structure, and not as a means of profit. The auditor and secretary of state refused to register and certify the bonds, and the railway company refused, until the bonds were negotiated, to construct the bridge. Matters remained in abeyance for a considerable time, the citizens of Ogallala and the county authorities being anxious to secure the construction of the bridge. Some time about June 1, 1884, the plaintiff, who seems to have been interested in real estate in Keith county, had a number of conversations with the county officers of that county in regard to the disposition of the bonds and the construction of the bridge, and orally, at least, he was requested to, if possible, secure a contractor for the bridge and a purchaser for the bonds. The bonds could not be negotiated unless certified and registered as required by law. The plaintiff, with C. G. Cone & Co., of Crete, thereupon undertook to bring a case in the supreme court to determine the validity of the bonds on a contract with the county board of Keith county, that they would be allowed 5 per cent with the accrued interest. The case is reported in 16 Neb., 508, the validity of the bonds being sustained. In the month of May, 1884, the defendant had submitted a proposition to the county commissioners of Keith county to construct the bridge in question, as follows:

" *To the Board of County Commissioners of Keith County, Nebraska:*

"Gentlemen—I hereby submit to you the following proposition: I will take the contract for the building of the bridge across the Platte river, at Ogallala, Neb., at the point where the Union Pacific R. R. Co. left it, and will

complete the same according to the plans and specifications now on file in your office, for the sum of $6 per lineal foot, you to pay for the same as follows: eighty per cent of the cost of the material when the bridge material is on the ground and the work ready to be begun, and eighty per cent of the work done each Saturday night, as the work progresses, estimates to be made on the work by the board of county commissioners, and the balance to be paid when the work is completed, and in case the bonds voted be not negotiated and your county does not have the money to make the payments as aforesaid, then you to deliver to me the bonds voted for the building of the bridge, and in addition you to issue to me certificates of indebtedness in the lieu of the payments as above specified, and I will deliver up to you again on such certificates of indebtedness when payments are made to me as aforesaid, and I will also deliver back to you on such bonds, and you can nego-. tiate the same, you to make payments to me of the amounts due me under the proposition when the money is realized on the bonds. I will place the material on the ground for the building of the bridge as soon as it can be done after the proposition is accepted, and will complete the bridge as soon as it can be done thereafter, probably within ninety days from the time work is begun.

" Dated May 31, 1884.

"S. S. Gouff."

This proposition was on the 4th day of June, 1884, accepted. Some considerable delay occurred before the defendant was able to give satisfactory bonds. The plaintiff secured the abandonment of the contract to build the bridge in controversy by the U. P. R. R. Co., and secured from that company an agreement for half rates on all material used in the construction of the bridge. The defendant seems to have been unable to make any progress during the summer in the purchase of material, or in perfecting arrangements to comply with the contract, and

seemed at one time to have been on the point of abandon-
ing the contract because of inability to proceed.    A num-
ber of his letters are in the record showing great anxiety
to have the plaintiff assist him with the work, and it was
not until after the contract set out in the answer, between
the plaintiff and defendant, had been entered into that any
progress was made towards the construction of the bridge.
The testimony tends to show that the plaintiff was the
moving spirit that secured the negotiation of the bonds,
the letting of the contract for the erection of the bridge to
the defendant; that secured the material to construct the
bridge, and in fact seemed to be at every point where his
services were needed.    A contract is set out in the record
between C. G. Cone & Co., and the defendant, dated Sep-
tember 25, 1884, for the furnishing of the material of the
bridge at a specified price.    But from Mr. Cone's own tes-
timony it is evident that he would take no risks and would
furnish nothing unless the money was in the county treas-
ury to pay for it.    There are some matters connected with
furnishing the lumber which Mr Cone does not explain
very clearly, but perhaps they are not very material in
this case.    The controlling question in this case is, Did the
plaintiff substantially comply with the terms of the con-
tract set out in the answer? and in our view the testimony
clearly establishes that fact.    He was therefore entitled to
a division of the profits.

It is difficult to determine the exact cost of the bridge,
there being no definite testimony on that point except that
of the defendant.

· Some objection was made on the re-argument to the
form of the action, it being claimed that an action at law
would lie.    The case, however, clearly comes within the
equitable jurisdiction of the court, being the settlement of
a partnership transaction.

Some objection is made that the plaintiff was paid $200
by Keith county for services connected with the negotia-

tion of the bonds and letting of the contract. Keith county is not here complaining, and the matter is not set out in the answer in a form, even if true, to affect the validity of the contract with the defendant. The defendant also claims that he is entitled to share in the commission received in negotiating the bonds, but there is no proof whatever that he was connected in any manner with such negotiation or had any right to any of the commission received for that service.

The amount due to the plaintiff and defendant respectively, as found by the court below, is to be paid to the plaintiff and defendant by the treasurer of Keith county, the warrant not to be sold to the highest bidder; and as thus modified the judgment of the court below is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.